**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RYAN COOKE, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3921 |
| | § | |
| DON H. JASPER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a Fair Labor Standards Act case. The plaintiffs sued Electronic Concepts, Inc. (ECI) and its president, Adam Jaspers, in 2007. In 2009, the plaintiffs filed a second amended complaint, adding TBD Services, Inc. as a defendant and alleging that it was liable as either a joint or successor employer with ECI. TBD Services has moved for summary judgment. (Docket Entry No. 66). The plaintiffs responded, (Docket Entry No. 67). TBD Services replied, (Docket Entry No. 68), and moved to strike some of the exhibits attached to the plaintiffs' response, (Docket Entry No. 69). The plaintiffs surreplied to the summary judgment motion, (Docket Entry No. 70), and responded in opposition to the motion to strike, (Docket Entry No. 75). With leave of court, the plaintiffs filed a supplemental response to the summary judgment motion, (Docket Entry No. 79). TBD Services elected not to reply to the supplemental response.

Based on a careful review of the pleadings; the motion, response, reply, surreply, and supplemental response; the record; and the applicable law, this court denies the motion to strike as moot and denies the summary judgment motion. As explained in detail below, there are disputed fact issues material to determining whether TBD Services is liable as a joint employer of or successor employer to ECI. A status and scheduling conference is set for **November 4, 2010, at**

**9:00 a.m.**

## I.     Background

Plaintiffs Ryan Cooke, Jason Houston, Shawn Farrenkopf, and Christopher Teixeria, worked

for ECI in Houston, Texas.  They allege that they performed work installing home-theater systems

for ECI for which they were not paid and seek unpaid regular and overtime compensation.  They

sued in 2007.  This court certified the case as a collective action under 29 U.S.C. § 216(b) in August

2008.  In September 2009, the plaintiffs amended to add as defendants TBD Services, Inc. and Adam

Jaspers. The plaintiffs alleged that some time after they filed suit, Adam Jaspers transferred ECI's

business and some of its employees to a new company, TBD Services, in order to avoid liability in

this  case.    The  plaintiffs  included  in  the  summary  judgment  evidence  two  tape  recordings

surreptitiously made of Adam Jaspers.  Both recordings are the subject of motions to strike.

One of the tape recordings features Adam Jaspers stating as follows:

> Note that we are in some notable financial trouble.  When I say that,
> I mean "out of money."  We sort of set our plans, built our plans
> around a Wal-Mart launch date.  Has come and gone. . . .
>
> So, we feel the thing that we're going to be doing is we are ultimately
> going to be closing Electronic Concepts.  It is going to be going out
> of business, the Wal-Mart contract is not signed, the electronic
> (inaudible) signed with another company.   So, this company
> dissolving and going out of business.  Which also sucks.  That
> (inaudible) in Houston, I'm sure you guys have all heard about this.
> We got sued in Houston basically, those guys said they worked for us
> for a lot longer than they did, principally is what happened.  And, we
> – they – most of them had gotten fired or laid off (inaudible) weeks.
> . . . anyways, they all put together a lawsuit and sued Electronic
> Concepts and as the (inaudible) law was written, we lost the suit,
> even though their time cards and their signed sheets and so on,
> because we used to just sort of take care of everybody, you know. .
> . . A guy came in, said I worked 26-hours, we didn't even ask, we'd
> write him a check.  And so, they said our record keeping was
> (inaudible).  Basically, we were going to lose the suit for what should

have been $2600 . . . over 5 or 6 guys, and instead they made the numbers so big that Electronic Concepts will go out and [sic] business and they will get nothing.  They went after hundreds of thousands so.  Large portions of it of course, are contributed to attorney's fees because it's been going on a year and a half and they were going, you know, $400 an hour but, so, there is – it was stupid.

. . . .

At any rate, I got all I needed.  So, now, all the guys who sued us (inaudible - background noise).  At any rate, so that's what's going on.

For who's left here, I mean, you guys have all kind of stuck here and hung out and tried to help us make it work the – what we are going to try to do is particularly for, particularly for Kevin and Chris, because ya'll have been full time, hopefully ya'll are going to have to get – you have to be laid off because Electronic Concepts is going to go out of business.  Right?  I put a word in with the manager of the new company, they might want to interview you guys and hire you by phone. . . . I won't even own the company, technically, (inaudible).

. . . .

(inaudible) has already offered to forego a check until August so that we can get the Wal-Mart piece.  We have a 166 stores under contract with Wal-Mart.  We had 26 nationally with Circuit City.  If Wal-Mart even talks about moving so (inaudible) by Christmas, it will be kind of funny.  In the meantime, its kind of scary.  So, that's what's going on. . . .

(Docket Entry No. 67, Ex. A).

In a second tape recording, Jaspers stated:

. . . But, there's not a bankruptcy, there's not going to be a bankruptcy.  I'm not paying these other people any money.  The only reason we changed the name of the company is actually to split off and spin off some contracts so that we could hide money from them so they wouldn't get any in the first place.

3

(*Id*., Ex. B).

In his affidavit, plaintiff Jason Houston stated that during his employment with ECI, he was told that "we would eventually be receiving work under a contract with Wal-Mart.  In fact, prior to leaving Electronic Concepts, Inc., we began to receive work orders from Wal-Mart for the installation of home theater equipment/consumer electronics purchased by Wal-Mart customers." (Docket Entry No. 67, Ex. C, ¶ 11).  Houston left ECI before it ceased doing business.  (*Id.*, ¶ 13). The plaintiffs allege that TBD Services is liable for the work Houston and others then at ECI did because TBD Services was a joint employer with ECI or because it was a successor employer to ECI.  (Docket Entry No. 67, p. 9).

In the third amended complaint, Houston alleged that he worked for TBD Services from April to June 2009; Farrenkopf worked for TBD Services beginning in December 2008; and Teixeira worked for TBD Services beginning in October 2008.  They argue that ECI had negotiated a contract with Walmart to perform installation services; the contract was awarded to TBD Services after ECI stopped doing business in its name; and the plaintiffs performed work under the Walmart contract that was awarded to TBD Services.  Houston stated in his affidavit that he installed home theater equipment that was purchased at Walmart stores in Houston under a contract with TBD Services. (Docket Entry No. 67, Ex. 3, ¶¶ 11–12).

TBD has submitted affidavits by Joy Jaspers and Adam Jaspers, as well as corporate documents, as its primary summary judgment evidence.  The documents show that ECI was organized under the laws of the State of Colorado in November 2006 and registered to conduct business in Texas in September 2007.  ECI marketed itself as a custom home theater design and installation company.  According to the affidavits, Joy Jaspers, who is Adam Jaspers's mother, had

cosigned on a vehicle loans obtained by ECI and a credit card used by ECI.  When ECI's major

customer, Circuit City, went into bankruptcy, ECI encountered financial difficulties.  (Docket Entry

No. 68, Ex. A, ¶¶ 4–5).  Joy Jaspers formed TBD Services to avoid or reduce her liability for the

loans she had cosigned for ECI.

TBD Services came into formal existence on July 7, 2009, organized under the laws of the

State of Colorado.  (Docket Entry No. 67, Ex. I, TBD Articles of Incorporation).  As president, Joy

Jaspers entered into an agreement with ECI to purchase its assets on July 15, 2009.  TBD Services

purchased vehicles, an office lease, office furniture, office supplies, electronic equipment, and tools

from ECI, paying $206,302.71.  (*Id.*, ¶ 4).  The asset purchase prevented ECI's vehicle loans from

defaulting—which would have exposed Joy Jaspers to liability on her guaranty—and allowed TBD

Services to use the vehicles "in a new business venture," using the proceeds to pay down the debt.

(*Id.* ¶ 5).  TBD Services registered to do business in Texas in July 2009.  TBD Services does

business under the name "The Home Theater Guys."  (Docket Entry No. 67, Ex. L, Statement of

Trade Name).

According to Joy Jaspers, TBD Services did not operate or continue to operate ECI's

business.  Instead, TBD Services and ECI had "different business operations," different clients, and

a different geographical market.  Jaspers asserts that the largest client is Ultimate Electronics, which

had no contracts with ECI.  TBD Services does little work in Texas, according to Joy Jaspers, while

ECI did most of its business in Texas.  TBD Services assumed ECI's lease for office space in Fort

Collins, Colorado, but otherwise conducted its business from different physical locations than ECI

used.  Joy Jaspers asserts that there is no sharing of company identification, websites, telephone

numbers, or e-mail addresses.  (*Id.*, ¶ 10).  Of the 52 people who have worked for TBD Services

since it began, only 5 ever worked for ECI: Josh Bloom, Jared Fredrickson, Jason Langley, Spencer

Morin, and Adam Jaspers.  According to Joy Jaspers, Adam Jaspers is a part-time sales and account

manager reporting to Alvin Kopel, TBD Services's general manager and (with Joy Jaspers) its co-

owner.  (*Id.*).  Joy Jaspers emphasizes that TBD Services did not control or operate ECI; TBD

Services is a separate entity; Adam Jaspers is a part-time employee with no decisionmaking

authority; and TBD Services operates with a "structure, internal controls, and an employee

handbook" developed by Joy Jaspers and Alvin Kopel, which were not developed or implemented

at ECI.  (*Id.*, ¶¶ 11–13).  Joy Jaspers asserted in her affidavit, and TBD Services asserted in its

responses to interrogatories, that it has not been awarded a contract from Walmart and has done no

business with Walmart.  (*Id.*, ¶ 8; Docket Entry No. 79, pp. 4–5).

In response, the plaintiffs submitted supplemental summary judgment evidence.  This

evidence includes e-mails from TBD Services with numerous references to Walmart jobs.  One of

those e-mails is from Alvin Kopel and states, "[w]e are currently your vendor partners for the

Walmart project in all of Colorado, Houston, San Antonio, and Austin."). (Docket Entry No. 79,

Ex. D).  Other e-mails show that TBD Services has a contract with a company known as Mastec or

Advant to install home theater equipment purchased at Walmart stores in Colorado and parts of

Texas.  The plaintiffs also submitted summary judgment evidence that they assert controverts TBD

Services's assertions that Adam Jaspers was simply a "part-time sales and account manager" who

did not have any significant managerial role.  The plaintiffs submitted e-mails from Kopel referring

to Adam Jaspers as his "partner" and showing that Adam Jaspers traveled extensively on behalf of

TBD.  Other e-mails show that Adam Jaspers makes hiring and firing decisions, sets up interviews

of potential employees, and conducts new employee orientations.  Yet other e-mails show that Adam

Jaspers collects past due accounts.  Finally, e-mails from Kopel refer to Jaspers as a founder of TBD

Services with Kopel and Joy Jaspers, and part of "top management," and that he participates in

6

management planning meetings. (Docket Entry No. 79, Exs. L–U). The plaintiffs assert that these e-mails support their argument that there are genuine issues material to determining whether TBD Services can be liable for FLSA violations as a joint or successor employer with ECI.

## II.     The Legal Standards

### A.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©. "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56© burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## B.      The FLSA

The FLSA defines an "employer" in part, as "any person acting directly or indirectly in the interest of an employer."  29 U.S.C. § 203(d).  Whether an entity is an employer for the purpose of the FLSA turns on the "economic reality" of the working relationship.  *Goldberg v. Whitaker House Coop.*, *Inc.*, 366 U.S. 28, 33 (1961).  The determination of an employment relationship "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity."  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).  The FLSA's definition of "employer" contemplates the possibility of multiple employers.  A single individual may be the employee of two or more employers at the same time. The Department of Labor regulations state that a joint employment relationship exists when there is an arrangement between employers to share an employee's services; one employer is acting directly or indirectly in the interest of the other employer or employers in relation to the employee; or the employers are associated with one another, directly or indirectly, with respect to the employment of the employee because one employer controls, is controlled by, or is under common control with the other employer.  29 C.F.R. § 791.2(b).  "The 'economic reality' test includes inquiries into: whether the alleged employer (1)

8

has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (quoting *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir.1984)).  The Fifth Circuit has also applied a five-factor test.  In *Wirtz v. Lone Star Steel Co.*, the court stated: "In considering whether a person or corporation is an 'employer' or 'joint employer', the total employment situation should be considered with particular regard to the following questions: (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?"  405 F.2d 668, 669–70 (5th Cir. 1968).  No one factor is determinative of whether a defendant is an "employer" under the FLSA. Assuming there are no material facts in dispute, whether a party is a joint employer is a question of law.  *Karr v. Strong Detective Agency, Inc.,* 787 F.2d 1205, 1206 (7th Cir. 1986) (per curiam).

Courts have applied the successor employer doctrine from labor law principles to the FLSA context.  *See Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749–50 (5th Cir. 1996); *Steinbach v. Hubbard,* 51 F.3d 843, 846–48 (9th Cir. 1995); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 289 n.10 (E.D. N.Y. 2007).  As the *Rojas* court explained,

> [The] successor doctrine arises in the context of discrimination cases in situations where the assets of a defendant employer are transferred to another entity.  The purpose of the doctrine is to ensure that an employee's statutory rights are not "vitiated by the mere fact of a sudden change in the employer's business.  The doctrine allows the aggrieved employee to enforce against the successor a claim he could have secured against the predecessor. . . .   [A]pplicability of the

9

> doctrine hinges on the need to protect a plaintiff where the offending
> entity is substituted by another company."

87 F.3d at 745, 750 (quoting *Brennan v. Nat'l Tel. Directory Corp.,* 881 F. Supp. 986, 992 (E.D. Pa.

1995)).  In *Rojas,* the court cited *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094

(6th Cir.1974), in which the court identified nine factors to be considered in determining whether

successor liability should be imposed in a discrimination case.  These factors are:

> (1) whether the successor company had notice of the charge or
> pending lawsuit prior to acquiring the business or assets of the
> predecessor; (2) the ability of the predecessor to provide relief; (3)
> whether there has been a substantial continuity of business
> operations; (4) whether the new employer uses the same plant; (5)
> whether he uses the same or substantially the same work force; (6)
> whether he uses the same or substantially the same supervisory
> personnel; (7) whether the same jobs exist under substantially the
> same working conditions; (8) whether he uses the same machinery,
> equipment, and methods of production; and (9) whether he produces
> the same product.

*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985) (paraphrasing *MacMillan* ).  The

*Rojas* court agreed with *Musikiwamba* that "the first two factors are critical.  The remaining seven

simply 'provide a foundation for analyzing the larger question of whether there is a continuity in

operations and the work force of the successor and predecessor employers.'" *Rojas*, 87 F.3d at 750

(quoting *Musikiwamba*, 760 F.2d at 750); *see also Bates v. Pacific Maritime Ass'n,* 744 F.2d 705,

709–10 (9th Cir. 1984) (three factors governing successor liability determination are (1) continuity

in operations and workforce, (2) notice of the claim, and (3) ability of predecessor employer to

provide relief); *Chao v. Concrete Mgmt. Res., L.L.C.*, No. 08-2501-JWL, 2009 WL 564381, at *3

(D. Kan. Mar. 5, 2009).

   **C.**      **The Summary Judgment Evidence**

The parties vigorously dispute whether the transcripts of the tape recordings of Adam Jaspers are competent summary judgment evidence.  The plaintiffs assert that all they need to do is show that the tape recordings meet the standard for admission under Rule 901 of the Federal Rules of Evidence.  (Docket Entry No. 67, pp. 5–7 (citing *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977))).  The defendants respond that the plaintiffs fail to show that the recordings are admissible under  *Biggins* or that they are relevant.  (Docket Entries No. 68, pp. 6–9; 69, pp. 2–5).

Whether the tape recordings are competent summary judgment evidence need not be resolved to decide the summary judgment motion.  Other evidence in the summary judgment record raises disputed fact issues that preclude summary judgment.  This aspect of the motion to strike is denied as moot.  Similarly, the challenges to, and the motion to strike portions of, the affidavits of the plaintiffs do not need to be resolved.  Even without considering those portions, the record evidence shows disputed fact issues.  Those aspects of the motion to strike are also denied as moot.

## IV.    Analysis

Joy Jaspers stated in her affidavit that TBD Services has never been awarded a contract from Walmart and has done no business for Walmart.  TBD Services argues that as a result, none of the named or opt-in plaintiffs performed any work for the benefit of TBD Services under a contract with Walmart.  (Docket Entry No. 66, Ex. A, Aff. of Joy Jaspers, ¶ 8).  Jaspers also states that the TBD Services never directly employed any of the named or opt-in plaintiffs in this case.  (*Id*.).  The plaintiffs respond that the evidence in the record creates disputed fact issues as to whether the plaintiffs worked for either ECI or TBD Services to install home theater systems purchased from Walmart pursuant to a contract to perform such work on a regular basis; whether the plaintiffs worked for ECI at the direction or in the interest of TBD Services; and whether TBD Services was a successor employer to ECI.

11

The first factor to be considered in the successor-employer analysis is whether the successor company had notice of the charge or pending lawsuit before acquiring the business or assets of the predecessor.  The evidence shows that TBD Services knew of this suit before buying ECI's assets. Indeed, the evidence shows that TBD Services was organized about three weeks after Adam Jaspers attended the mediation in this lawsuit.  (Docket Entry No. 67, Ex. H, Aff. of Adam Jaspers, ¶ 4).

The second factor is the ability of ECI, the predecessor company, to provide relief.  The evidence shows that ECI is no longer in good standing in Colorado, (*id.*, Ex. H), that it is no longer doing business in Texas, and that it ceased doing business because of the bankruptcy of its largest customer.  (*Id.*, Ex. H, Aff. of Adam Jaspers, ¶ 7).

The third factor in determining successor employer status is whether there has been a substantial continuity of business operations.  The plaintiffs point to evidence, including the websites of both ECI and TBD Services, that both companies were providing the same kinds of services—home-theater installation, lighting-control systems installation, and audio-system installation.  Although TBD Services asserts that it is not doing work in Texas, it is registered to do business in Texas and the plaintiffs have submitted e-mails from TBD Services referring to work in Texas as well as in Colorado.  (Docket Entry No. 70, Ex. C (December 2009 e-mail from Kopel stating "[w]e are currently your vendor partners for the Walmart project in all of Colorado, Houston, San Anton io, and Austin.")).

The fourth factor is whether the new employer uses the same plant.  The summary judgment evidence shows that TBD Services assumed ECI's lease for office space in Colorado as part of the Asset Purchase Agreement.  (Docket Entry No. 55, p. 10)

The fifth factor is whether the new employer uses the same or substantially the same work force. TBD Services asserts that of the 52 employees who have worked for it, only 5 ever worked for ECI. It is unclear, however, whether the plaintiffs performed work (even if ostensibly for ECI before it stopped doing business or after ECI ceased doing business) installing home-theater systems purchased from Walmart under a contract between TBD Services and another company (identified as Mastec or Advent) at the direction of, or for the benefit of, TBD Services. The plaintiffs assert that they did perform such work and were not paid. (Docket Entry No. 67, ¶¶ 3, 10).

The sixth factor is whether TBD Services uses the same or substantially the same supervisory personnel as ECI. The only supervisor at ECI was Adam Jaspers. The evidence is conflicting as to his role at TBD services. Joy Jaspers characterizes him as a part-time sales and account manager at TBD Services, not authorized to make binding decisions, and states that he reports to his boss, Kopel. (Docket Entry No. 66, Ex. A, ¶ 12). But the plaintiffs have submitted summary judgment evidence showing that Adam Jaspers was a member of top management of TBD Services. Kopel described Adam Jaspers in an email as his "partner," with important company responsibilities. (Docket Entry No. 66, Exs. C, D (e-mails inviting Adam Jaspers to management meetings); Docket Entry No. 79, Exs. L–U).

TBD Services does not contest most of the seventh, eighth, and ninth factors. TBD Services and ECI hired people for the same kind of installation jobs. TBD Services uses the same equipment as ECI, although TBD asserts that it used very different business methods. TBD Services and ECI produce the same product.

Applying the factors identified by the case law to the summary judgment evidence shows disputed fact issues material to determining whether TBD Services is liable as a joint or successor

13

employer to ECI. The evidence shows that TBD Services was fully aware of the claim when it bought ECI's assets. The evidence is conflicting as to whether and when ECI ceased doing business; whether TBD Services simply continued doing ECI's business; whether and when either ECI or TBD Services entered into a contract to install Walmart-purchased home theater systems; and whether and to what extent the plaintiffs worked to install such systems. These fact issues preclude summary judgment.

## IV.     Conclusion and Order

The motions filed by TBD Services to strike the summary judgment evidence and for summary judgment are denied. A status and scheduling conference is set for **November 4, 2010, at 9:00 a.m.**

SIGNED on October 25, 2010, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

14